# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:12-cv-00022-MR

| | | |
|---|---|---|
| **i play. inc.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| | ) | |
| **D. CATTON ENTERPRISE, LLC, a** | ) | |
| **New York Limited Liability Company,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to
Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion to
Transfer Venue for Lack of Personal Jurisdiction [Doc. 14]; Plaintiff's
Motion for Sanctions [Doc. 31]; and the Plaintiff's Motion to Amend
Complaint [Doc. 36].

## I.    PROCEDURAL BACKGROUND

On February 3, 2012, the Plaintiff i play. inc. initiated this action
against the Defendant D. Catton Enterprise, LLC seeking the following
declaratory relief: (1) a declaration of non-infringement of U.S. Patent No.
7,553,831 ("the '831 Patent"); (2) a declaration of invalidity of the '831

Patent; (3) a declaration of non-infringement of trade dress or trademark rights; and (4) a declaration of non-infringement of copyright. [Doc. 1]. The Plaintiff's Complaint also asserts claims for false patent marking and unfair competition and unfair and deceptive trade practices. [Id.]. On July 9, 2012, the Defendant filed a motion to dismiss the Complaint on the grounds that the Court lacks personal jurisdiction over the Defendant. [Doc. 14]. In response to the Defendant's motion, the Plaintiff sought leave to take early discovery on the jurisdictional issue prior to responding to the motion to dismiss. [Doc. 16]. The Court granted the Plaintiff's request for expedited discovery on August 28, 2012, giving the Defendant thirty (30) days to respond to the Plaintiff's written discovery; allowing the Plaintiff thirty (30) days from the receipt of responses to the written discovery to take depositions; and giving the Plaintiff forty-five (45) days from receipt of the Defendant's written discovery responses to respond to the Motion to Dismiss. [Doc. 21 at 4].

The Plaintiff served its Interrogatories and Requests for Production of Documents on August 29, 2012. On October 2, 2012, the Court granted the Defendant's Motion for an Extension of Time to respond to the discovery up to October 15, 2012. [Doc. 23]. On October 5, 2012, the Defendant served verified responses to the discovery but did not produce

Case 1:12-cv-00022-MR   Document 46   Filed 03/25/13   Page 2 of 24

any documents responsive to the requests. In response to the Defendant's objections and confidentiality concerns, on October 9, 2012, counsel for the Plaintiff drafted and proposed a Consent Protective Order, which was agreed to by the parties and entered by the Court on October 15, 2012. [Doc. 25]. Also on October 9, 2012, counsel for the Plaintiff sent counsel for the Defendant a good faith letter in an attempt to resolve the remaining discovery disputes. The Defendant, however, did not supplement its discovery responses, and the Plaintiff filed a motion to compel on October 18, 2012. [Doc. 26].

The Defendant's response to the Plaintiff's motion to compel was due on November 5, 2012. On October 29, 2012, the Defendant filed a motion requesting an additional thirty (30) days, through and including November 28, 2012, to respond to the Plaintiff's motion and to produce the requested discovery. [Doc. 28]. The Court denied the Defendant's motion by a text order entered November 2, 2012. The Defendant did not respond to the Plaintiff's motion to compel by the November 5, 2012 deadline. On November 7, 2012, the Court granted the Plaintiff's motion to compel, directing the Defendant to respond fully to the Plaintiff's request for production of documents and interrogatories within twenty-one (21) days.

3

The Plaintiff's request for an award of fees and expenses was held in abeyance pending further Order of the Court.  [Doc. 30].

On December 1, 2012, the Plaintiff filed a motion for sanctions against the Defendant for failing to comply with the Court's Order of November 7, 2012.  [Doc. 31].  The Court held a hearing on this motion on January 25, 2013.  Following the hearing, the Court took the motion for sanctions under advisement and directed the Defendant to provide further supplemental responses to the jurisdictional discovery by February 1, 2013.  The Court further directed the parties to complete jurisdictional discovery and file any further supplemental briefs regarding the issues of jurisdiction and/or sanctions by March 1, 2013.  [See Text-Only Order entered Jan. 28, 2013].

As directed, the parties filed their supplemental briefs.  [Docs. 38, 39].  Additionally, the Plaintiff filed a motion seeking leave to amend its Complaint.  [Doc. 36].  The Defendant has not opposed the Plaintiff's motion to amend.

Having been fully briefed, these matters are now ripe for disposition.

4

## II. DISCUSSION

### A. Plaintiff's Motion for Sanctions

The Plaintiff moves the Court to sanction the Defendant for its failure to provide full and complete responses to the Plaintiff's jurisdictional discovery, as previously ordered by the Court. Specifically, the Plaintiff requests that the Court enter an Order (1) denying the Defendant's Motion to Dismiss or Transfer or finding that the defenses raised therein have been waived; (2) prohibiting the Defendant from using any of the information sought in Plaintiff's Motion to Compel and ordered to be produced by the Court on November 7, 2012, at a subsequent hearing or at the trial of this matter; (3) directing that the matters addressed in the November 7, 2012 Order be deemed as established in the Plaintiff's favor for the purposes of this action; and (4) awarding the Plaintiff its reasonable attorneys' fees and expenses incurred in bringing the Motion to Compel and the Motion for Sanctions.

Where a party fails to obey a discovery order the Court may issue such "just orders" as may be appropriate, including but not limited to:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part; . . . or

(vii) treating as contempt of court the failure to obey any order . . . .

Fed. R. Civ. P. 37(b)(2)(A). "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

In the present case, the question of personal jurisdiction has centered largely around the origin and dissemination of a November 10, 2011 letter ("Infringement Letter") written by Defendant's attorney, Anthony LoCicero, in which the Defendant alleges that the Plaintiff's water bottle nipple adapter infringes the '831 Patent. [Doc. 1-3]. It is alleged in the Complaint that the letter was delivered to one of the Plaintiff's major customers, Buy Buy Baby. [Doc. 1 at ¶20]. In Interrogatory No. 9, the Plaintiff asked the Defendant to "[i]dentify all customers or third parties of whom you are aware that received the [Infringement Letter] or a similar letter." [Doc. 27-2 at 6]. In response, the Defendant simply referenced the copy of the

6

Infringement Letter attached to the Complaint. This letter, however, does not identify any specific addressee, as it is addressed only to "Dear Sir or Madam." The Defendant further stated that it was unaware of any "other" recipients of the Infringement Letter. [Id.].

At the January 25, 2013 hearing, counsel for the Defendant advised the Court that attorney LoCicero had told him that he (LoCicero) had sent the Infringement Letter to only one person, David Catton, the sole member of the Defendant. On February 1, 2013, the Plaintiff took the deposition of a representative of Frederick Hart Company d/b/a/ Compac Industries ("Hart"), the exclusive licensee and manufacturer of the Defendant's product. In that deposition, the representative testified that he received the Infringement Letter from Catton and forwarded it to Buy Buy Baby. The Defendant, however, has never supplemented its discovery responses to clarify the recipients of the Infringement Letter.

In Interrogatory No. 8, the Plaintiff asked the Defendant to "[i]dentify and describe in detail all communication you had with . . . any officer, employee or representative of [Hart] regarding communications with customers of [Plaintiff] regarding asserted infringement of patents." [Doc. 27-2 at 5]. In its initial discovery response, the Defendant objected to this

7

interrogatory on the grounds of attorney-client privilege and work-product immunity. [Id.]. These objections have never been withdrawn.

The Defendant subsequently produced emails from August 2011 which clearly contemplate prior communications between the Defendant and Hart regarding the Plaintiff's alleged patent infringement. The Defendant, however, has yet to identify any other communications discussing or analyzing the asserted infringement, planning a response or reflecting the transmission of the Infringement Letter from the Defendant to Hart and subsequently to the Plaintiff's customer.

In Interrogatory No. 2, the Plaintiff asked the Defendant as follows:

> 2. For the time period of 2005 to the present, did you authorize, license, or otherwise allow any third party to sell the Disputed Products? If so, please state:
>
> a. The identity of the seller;
>
> b. Whether the seller sold the product in North Carolina in any of those years;
>
> c. Your gross revenues from sales of the Disputed Products in North Carolina with respect to each year identified; and
>
> d. Your gross revenues from sales of the Disputed Products worldwide with respect to each year identified.

8

[Doc. 27-2 at 2-3]. In its initial discovery responses, the Defendant responded that "Frederick Hart Co. has been licensed to sell products covered by defendant's patent. Hart does not report sales of covered products by State, either by revenue or units sold. A schedule of products sold by Defendant's licensee will be provided to counsel for plaintiff on an attorney's eyes only basis pursuant to a Protective Order." [Id. at 3]. A Consent Protective Order was drafted by Plaintiff's counsel, reviewed with Defendant's counsel, and submitted to the Court within one week and entered by the Court on October 15, 2012. [Doc. 25]. Despite entry of the Protective Order, no further response was given to this interrogatory.

Even after Plaintiff's Motion to Compel [Doc. 26], the Court's Order granting Plaintiff's Motion to Compel [Doc. 30], and the Plaintiff's Motion for Sanctions [Doc. 31], no additional information or documents were forthcoming in response to this interrogatory. In fact, in a Declaration dated December 20, 2012, David Catton asserted under penalty of perjury that the Defendant was "not in possession" of any documents evidencing such gross revenues or the sales of its products in North Carolina, as Hart "does not provide the defendant with . . . sales figures." [Doc. 33-1]. Catton reiterated these statements in his verified supplemental discovery responses dated December 18, 2012. [Doc. 33-2 (stating that "Hart does

9

not report sales of covered products. Defendant does not have any knowledge concerning sale of the product worldwide by Frederick Hart Co.")].

After the January 25, 2013 hearing on the motion for sanctions, the Defendant finally produced documents that revealed that as early as the date of the Defendant's initial discovery responses, David Catton had in his possession copies of royalty reports from Hart which detailed all of Hart's sales of the licensed products under the Licensing Agreement from August 2010 through September 30, 2012, both nationally and in the state of North Carolina, as well as the Defendant's gross revenues from such sales.

As outlined above, the Defendant repeatedly delayed providing full and complete responses to the Plaintiff's straightforward discovery requests. Additionally, the discovery responses that were eventually produced were non-responsive, evasive, and in at least some instances, manifestly false. Thus, in addition to its repeated delays in providing basic jurisdictional information to the Plaintiff, the Defendant appears to have attempted to mislead both the Plaintiff and the Court about its sales of its patented products in North Carolina. The Defendant's conduct can only be classified as willful. Further, the Defendant's evasive tactics have been neither harmless nor substantially justified under the circumstances. See

Fed. R. Civ. P. 37(b)(2)(C). Such tactics have caused the Plaintiff to expend substantial resources in an effort to obtain the Defendant's compliance with discovery and the Court's Orders and have unnecessarily prolonged what should have been a relatively short period for jurisdictional discovery. For these reasons, the Court concludes that the imposition of Rule 37 sanctions is warranted.

A party who fails to comply with jurisdictional discovery may be deemed to have waived any objection to the exercise of personal jurisdiction. See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 708-09, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); English v. 21st Phoenix Corp., 590 F.2d 723, 728-29 (8th Cir. 1979); Knox v. Palestine Liberation Org., 229 F.R.D. 65, 70 (S.D.N.Y. 2005); Volkart Bros., Inc. v. M/V "Palm Trader," 130 F.R.D. 285, 289 (S.D.N.Y. 1990). For the reasons set forth above, the Court concludes that finding such waiver would be entirely appropriate in this case. Furthermore, as the Defendant has not identified any circumstances which would make an award of expenses unjust, the Court will award the Plaintiff its reasonable fees and expenses incurred in filing and pursuing the Motion to Compel and Motion for Sanctions.

**B.     Defendant's Motion to Dismiss or Transfer Venue**

Alternatively, the Court concludes that the Defendant's Motion to Dismiss or Transfer Venue should be denied because personal jurisdiction exists over the Defendant in this forum.

Where personal jurisdiction is challenged in a declaratory action related to non-infringement of a patent, the issue of personal jurisdiction "is 'intimately related to patent law' and thus governed by Federal Circuit law regarding due process." Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006) (quoting Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003)). Where non-patent claims are also asserted, Federal Circuit law is still applicable so long as "'the resolution of the patent infringement issue will be a significant factor' in determining liability under the non-patent claims." Breckenridge Pharm., 444 F.3d at 1361 (quoting 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1988).

Here, in addition to the patent-related claims, the Plaintiff has asserted a state law claim for unfair and deceptive trade practices arising from the Defendant's threats of litigation and communication of false assertions to the Plaintiff's customer of patent infringement by the Plaintiff. As such, the resolution of the patent infringement issue will be "a significant

factor" in determining liability under the Plaintiff's state law claim. Accordingly, the Court will apply the law of the Federal Circuit in determining whether the exercise of personal jurisdiction is proper as to all claims asserted in this case.

Where a defendant is not subject to general jurisdiction in a forum, the Court may nevertheless exercise specific jurisdiction over the defendant if the action "arises out of" or "relates to" the defendant's activity in the forum. Breckenridge Pharm., 444 F.3d at 1360-61 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Determining the existence of specific jurisdiction is a two-part inquiry. First, the Court must determine whether the state long-arm statute permits service of process on the defendant. Breckenridge Pharm., 444 F.3d at 1361. Second, the Court must determine that the exercise of personal jurisdiction would satisfy the requirements of due process. Id. The North Carolina long-arm statute was intended to give "the North Carolina courts the full jurisdictional powers permissible under federal due process." JHRG LLC v. Stormwatch, Inc. No. 1:09CV919, 2011 WL 3111971, at *6 (M.D.N.C. July 26, 2011) (quoting Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977)). Accordingly, the "jurisdictional analysis collapses into a single

determination of whether the exercise of personal jurisdiction comports with due process." JHRG, 2011 WL 3111971, at *6 (quoting Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1329 (Fed. Cir. 2008)). To determine whether asserting jurisdiction over an out-of-state defendant comports with due process, the Court must assess: (1) whether the defendant has "purposefully directed" its activities at the forum state; (2) whether the claim "arises out of" such activities; and (3) whether the assertion of jurisdiction would be "reasonable and fair." Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001); Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1995). "The first two factors correspond with the 'minimum contacts' prong of the traditional International Shoe analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." Inamed, 249 F.3d at 1360.

    The Federal Circuit has repeatedly held that "the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee." Id. at 1361; Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-61 (Fed. Cir. 1998) ("Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum."). "For the

exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit." Silent Drive, 326 F.3d at 1202 (quoting Inamed, 249 F.3d at 1361). Such "other activities" may include "initiating judicial or extrajudicial patent enforcement with the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." Avocent Huntsville Corp., 552 F.3d at 1334.

In Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories., Inc., 444 F.3d 1356 (Fed. Cir. 2006), a Colorado licensor, in cooperation with its exclusive licensee, sent a letter to customers of the plaintiff within the State of Florida informing them of the licensor's patent and urging the customer to consult with its patent attorney before entering into any arrangements for the distribution, dispensing or substitution of the disputed product. The plaintiff filed suit in Florida eight days after learning of the letters. Id. at 1360. The Federal Circuit reversed the district court's grant of the licensor's motion to dismiss for lack of personal jurisdiction. Id. at 1360, 1369. In addition to the letters sent in the forum state, the Federal Circuit found the following facts supported the exercise of jurisdiction over the licensor: (1)

15

the licensor had an exclusive licensing agreement with the licensee; (2) the licensee, although not headquartered or incorporated in Florida, conducted business there; (3) the license agreement granted the licensee the right to sue for patent infringement with the licensor's consent and the licensor and licensee agreed to cooperate in any enforcement actions; (4) the license agreement granted the licensee control of the prosecution or maintenance of any patent or application that the licensor abandoned or permitted to lapse. Id. at 1366-67. The Court further noted that the agreement contemplated "an ongoing relationship" between the licensor and licensee "beyond royalty payments" and that such a relationship actually existed in that the licensor coordinated with the licensee in sending cease and desist letters, in litigating infringement claims, and being represented jointly by counsel. Id. Therefore, the Court concluded that the licensor had "purposefully availed itself to the privilege of conducting activities within [the forum]." Id.

Similarly, in the present case, the Defendant made multiple contacts to the Plaintiff's offices in Asheville North Carolina in July 2011, claiming that the Plaintiff's Green Sprouts® Water Bottle Cap Adapter infringes the '831 Patent and threatening to initiate litigation and to prevent Plaintiff from selling its product. In a letter dated August 26, 2011, attorney Anthony

LoCicero, on behalf of the Defendant, wrote to the Plaintiff's counsel at his offices in Asheville, North Carolina, asserting that the Plaintiff's product infringes the Defendant's '831 Patent, as well as asserting possible additional claims for trademark and trade dress infringement, and demanding on behalf of the Defendant that the Plaintiff stop selling its product and compensate the Defendant for the claimed infringement.

E-mails obtained by the Plaintiff through jurisdictional discovery demonstrate that Hart solicited and encouraged the Defendant to undertake the activities of contacting the Plaintiff and sending the Plaintiff letters asserting infringement. Further, Hart, through its officer, solicited and encouraged the Defendant to have its attorney send letters or notices to retailers asserting infringement by the Plaintiff so that Hart could pressure retailers to replace the Plaintiff's product. The Defendant and Hart, through their respective officers, corresponded multiple times regarding the pursuit of this strategy and the preparation of such a letter by the Defendant's attorney. [Doc. 33-2 at 22-25].

Attorney Anthony Lo Cicero prepared the November 10, 2011 "Infringement Letter" and provided it directly to the Defendant. The Defendant provided the Letter directly to Hart, which in turn sent the letter to Buy Buy Baby, a major customer of the Plaintiff which sells the Plaintiff's

products, including the Green Sprouts® Water Bottle Cap Adapter, through its retail outlets including stores in Charlotte, Durham, and Morrisville, North Carolina and through its website, www.buybuybaby.com.[1]

Effective July 29, 2010, the Defendant granted Hart an exclusive license to market and manufacture a water bottle nipple adapter incorporating the '831 Patent. [Doc. 33-2 at 8-21]. The licensing agreement requires Hart to pay the Defendant royalties in the amount of 7% of orders of water bottle adapter sold under this Licensing Agreement, with the exception of certain wholesalers for which royalties were 4%. [Id.]. The licensing agreement further gives Hart substantial rights with respect to patent enforcement and patent litigation issues. Specifically, the exclusive license agreement grants Hart the right to sue for patent infringement with the Defendant's consent, and it provides that the Defendant and Hart will agree to cooperate in any enforcement actions. The license agreement further grants Hart control of the prosecution or maintenance of any patent or application if Defendant is unable or unwilling to do the same abandoned or permitted to lapse. [Id.].

Although not headquartered or incorporated in the forum, Hart is the exclusive manufacturer and initial seller of the licensed products in North

---

[1] It is still not known if the Infringement Letter was sent to customers other than Buy Buy Baby as the Defendant stated in its interrogatory response that it is unaware of the identities of the letter's recipients.

Carolina and conducts substantial business here. The jurisdictional discovery produced by Hart establishes that sales of the licensed product were made directly to a customer in North Carolina. Additionally, Hart sells the licensed product through its own website to individuals, small businesses and wholesalers, and also through wholesale merchandisers who place the products online and in retail outlets throughout the United States, including North Carolina.

For the foregoing reasons, the Court concludes that the Defendant has, through its relationship with its licensee, "purposefully availed itself to the privilege of conducting activities within" North Carolina. <u>Breckenridge Pharm.</u>, 444 F.3d at 1366-67. Moreover, the Plaintiff's cause of action is clearly related to or arises out of the Defendant's activities in North Carolina. <u>See Akro</u>, 45 F.3d at 1548-49.

Having determined that the Defendant has purposefully availed itself of conducting activities within the forum and that the cause of action is clearly related to or arises out of the Defendant's activities in the forum state, the Court turns to the third prong of the due process inquiry, namely, whether the exercise of personal jurisdiction would be reasonable and fair. On this issue, the burden falls on the Defendant to demonstrate "a compelling case that the presence of some other considerations would

19

render jurisdiction unreasonable." Id. at 1549 (quoting Burger King, 471 U.S. at 477, 105 S.Ct. 2174).

The Defendant argues that the exercise of personal jurisdiction would be unfair and unreasonable because there is no evidence that the Defendant's exclusive licensee purposefully directed any marketing activities of the disputed products to North Carolina *before the filing of this lawsuit.* [Doc. 38 at 9]. Specifically, the Defendant argues that the evidence produced in response to the Plaintiff's jurisdictional discovery requests makes clear that there was no sale or shipment of the licensed product prior to August 2012 and that the Infringement Letter was sent *only* to one customer of the Plaintiff, Buy Buy Baby, and not purposefully directed to any customer actually headquartered in North Carolina. [Id. at 12]. This argument must fail for several reasons. First, the Defendant relies upon the evidence produced during jurisdictional discovery to argue that there were no sales of the licensed product in North Carolina prior to August 2012. As previously discussed, however, the Court has found the Defendant's discovery responses on this issue to be incomplete and evasive, at best. The Defendant's steadfast refusal to be forthcoming with discovery regarding sales of its licensed products supports a reasonable inference that the information provided to date is not entirely accurate and

that subsequent discovery may in fact reveal more sales than the amount to which the Defendant currently admits. Moreover, Defendant's lack of compliance in discovery taken with the existence of post-complaint activity in North Carolina leads to a reasonable inference that pre-complaint activity in North Carolina did, in fact, occur. Accordingly, the fact that the current state of discovery indicates only post-complaint sales of the licensed product within the forum state is not dispositive of the issue of constitutional reasonableness.

Similarly, the fact that the Plaintiff has so far been able to identify only one of its customers that was contacted by the Defendant or its licensee does not render the exercise of jurisdiction unfair or unreasonable. The Defendant has never supplemented its discovery responses to clarify the actual recipients of the Infringement Letter, and thus, it is unclear whether there are in fact other customers that were contacted by the Defendant or its exclusive licensee. Even if only the one customer was in fact contacted, however, the fact that this customer is not headquartered in North Carolina is irrelevant, as the Plaintiff has established that this customer conducts substantial business in North Carolina. See Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1459 (Fed. Cir. 1997).

As the domicile of the Plaintiff, North Carolina "has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." <u>Burger King</u>, 471 U.S. at 473, 105 S.Ct. 2174).  "The injury of which [Plaintiff] complains – restraint of its production of goods by means of a non-infringed, invalid and/or unenforceable patent – falls well within the boundaries of the sorts of injuries that [North Carolina] has an interest in discouraging." <u>Akro</u>, 45 F.3d at 1549.  Despite bearing the burden on this issue, the Defendant has failed to identify any considerations which would render the exercise of personal jurisdiction unfair or unreasonable in this case.  Accordingly, the Court concludes that personal jurisdiction may be exercised over the Defendant consistent with due process.  The Defendant's motion to dismiss or transfer venue for lack of personal jurisdiction is denied.

### C.    Plaintiff's Motion to Amend

Finally, the Plaintiff moves to amend its Complaint in order to add facts related to personal jurisdiction in light of information through jurisdictional discovery; to add a new defendant, Frederick Hart Co., Inc. d/b/a Compac Industries, Inc. ("Hart"); and to assert that the Defendant and Hart were engaged in a conspiracy to commit the underlying unfair and

22

deceptive acts previously alleged.  [Doc. 36].  The Defendant has not opposed the Plaintiff's motion.

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that, after the time period set forth in 15(a)(1), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The Rule further provides that leave to amend shall be freely given "when justice so requires."  Id.  Therefore, absent a showing of undue delay, bad faith, futility, or prejudice to the opposing party, a Court should grant a party leave to amend.  See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Upon consideration of the Plaintiff's Motion, the Court concludes that the proposed Amended Complaint would not result in undue delay or prejudice to the Defendant.  The present case is still in its infancy.  Due to the pending Motion to Dismiss, the Defendant has not yet filed an Answer, the parties have not held the Initial Attorneys' Conference, and discovery (other than limited jurisdictional discovery) has not commenced. Further, the proposed amendment does not appear to be futile or made in bad faith. Accordingly, the Court will grant the Plaintiff's Motion to Amend.

## III. ORDER

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion to Transfer Venue for Lack of Personal Jurisdiction [Doc. 14] is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Sanctions [Doc. 31] is **GRANTED**, and the Defendant shall, within fourteen (14) days of the entry of this Order, pay the Plaintiff its reasonable fees and expenses incurred in pursuing the Motion to Compel and Motion for Sanctions, including any attorney's fees incurred in briefing the motions and attending the January 25, 2013 hearing.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Amend Complaint [Doc. 36] is **GRANTED**. The Plaintiff shall file its Amended Complaint within seven (7) days of the entry of this Order.

**IT IS SO ORDERED.**       Signed: March 23, 2013

Martin Reidinger
United States District Judge

24